IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  09-cv-00014-WYD-MEH

LEONARD H. CHANDA & ASSOCIATES, L.P.

    Plaintiff,

v.

MERIDIAN METROPOLITAN DISTRICT;
DESIGN CONTROL COMMITTEE OF MERIDIAN INTERNATIONAL BUSINESS CENTER;
RAYMOND A. BULLOCK, in his official capacity as member of the Design Control Committee of Meridian International Business Center;
MICHAEL A. BARBER, in his official capacity as member of the Design Control Committee of Meridian International Business Center;
PHIL McCURDY, in his official capacity as member of the Design Control Committee of Meridian International Business Center;
RICK POPPE, in his official capacity as member of the Design Control Committee of Meridian International Business Center;
JOHN M. PROSSER, in his official capacity as member of the Design Control Committee of Meridian International Business Center;
LAUREL S. RAINES, in his official capacity as member of the Design Control Committee of Meridian International Business Center;
JEROME M. SERACUSE, in his official capacity as member of the Design Control Committee of Meridian International Business Center;
DOUGLAS C. SCOTT, in his official capacity as member of the Design Control Committee of Meridian International Business Center; and
BRENT MILLER in his official capacity as member of the Design Control Committee of Meridian International Business Center,

    Defendants.

**ORDER**

    THIS MATTER comes before the Court on Defendant Meridian Metropolitan

District's Motion to Dismiss [doc. #11], filed January 26, 2009, and the "DCC

Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)" [doc. #16], filed

February 9, 2009. In the first Motion, Defendant Meridian Metropolitan District [hereinafter "the District"] requests the dismissal of Plaintiff's First Claim for Relief pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6). Plaintiff responded to the Motion on February 18, 2009, and the District replied on March 2, 2009. In the second Motion, Defendants Design Control Committee of Meridian International Business Center [hereinafter "the DCC"], Raymond A. Bullock, Michael R. Barber, John Kilrow, Phil McCurdy, Rick Poppe, John M. Prosser, Laurel S. Raines, Jerome M. Seracuse, Douglas C. Scott, Peter Italiano, Brent Miller, and George Weaver [hereinafter "the DCC Members" and, collectively with the DCC, "the DCC Defendants"] request the dismissal of Plaintiff's Sixth, Seventh, Eighth, and Ninth Claims for Relief pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff responded to this Motion on March 4, 2009, and the DCC Defendants replied on March 23, 2009. For the reasons stated herein, I will grant the first Motion and deny the second Motion.

**A. Background**

This case was removed from Douglas County District Court, State of Colorado, on January 5, 2009. In its original state court complaint, Plaintiff Leonard H. Chanda & Associates, L.P., brings Nine Claims for Relief. In an order dated February 13, 2009 [doc. #18], I dismissed Plaintiff's Fifth Claim for Relief, along with Defendants John Kilrow, Peter Italiano, and George Weaver, without prejudice. Then, in an order dated May 19, 2009 [doc. #34], I dismissed Plaintiff's First and Second Claims for Relief with prejudice. In its complaint, Plaintiff makes the following allegations.

Plaintiff seeks to construct an office building on its real property located in the Meridian International Business Center [hereinafter "Meridian Office Park"] in Douglas County, Colorado. (Compl. ¶¶ 7, 8, 10.) The real property is subject to the Declaration of Protective Covenants that governs all property located in the Meridian Office Park. (Compl. ¶ 11.) "The Protective Covenants state no improvements shall be constructed on any parcel in the Meridian Office Park unless the DCC approves, in writing, the plans and specifications for the proposed improvements." (Compl. ¶ 16.)

Plaintiff's property is subject to a utility easement and an irrigation easement, covering the front twenty-seven feet of its property. (Compl. ¶¶ 22-24.) The District encroached onto Plaintiff's property by constructing utility improvements outside the boundaries of the utility easement. (Compl. ¶¶ 25-27.) As a result, Plaintiff engaged the District in discussions regarding possible amendment of the existing easements to include these encroachments. (Compl. ¶¶ 28.) In response, the District drafted a proposed easement that, instead of merely recognizing the encroachments, sought to expand the easement on Plaintiff's property from a twenty-seven foot area to a forty-foot area. (Compl. ¶¶ 29-32.) In response to Plaintiff's objection to this proposed easement, the District "issued an ultimatum for [Plaintiff] to execute the Proposed Easement or else face [ ] District opposition to [Plaintiff's] building applications to the DCC." (Compl. ¶ 34.) Plaintiff nonetheless refused to execute the District's proposed easement, and Defendant Raymond A. Bullock, Chairman of the DCC and President of the District, told Plaintiff that if it did not execute the proposed agreement, it would not see its project built. (Compl. ¶¶ 5, 35-36.)

On April 9, 2008, Plaintiff submitted proposed plans to the DCC Defendants for review. (Compl. ¶ 37.) The District opposed these plans, claiming they should not be approved until Plaintiff executed the proposed easement. (Compl. ¶ 38.) On April 23, 2008, the DCC Defendants deferred approval of the plans, stating they would not authorize them until a resolution regarding the encroachments outside the existing easements was reached. (Compl. ¶¶ 39-40.) On June 1, 2008, Plaintiff submitted revised plans, and on June 18, 2008, the DCC Defendants stated they would not authorize building plans until Plaintiff executed the proposed easement. (Compl. ¶¶ 41-42.) On June 29, 2008, counsel for the DCC Defendants told Plaintiff that under the Protective Covenants "the DCC Defendants have the right to withhold approval of plans for improvements if those plans violate or are inconsistent with any requirements of the [ ] District" and that the District had advised the DCC Defendants that its requirements had not been met with respect to Plaintiff's property. (Compl. ¶¶ 43-44.) Counsel for the DCC Defendants thus stated that the District's advisements were the basis for the withholding of approval. (Compl. ¶ 45.) "[T]he DCC Defendants have refused to consider [Plaintiff's] plans as complete and ripe for final review and approval," and the District "has refused to advise the DCC Defendants that its requirements have been met with respect to [Plaintiff's] Property." (Compl. ¶¶ 46-47.)

Plaintiff alleges that the District "is a quasi-municipal corporation and political subdivision of the State of Colorado." (Compl. ¶ 2.) In its Fourth Claim for Relief, asserted against the District, Plaintiff alleges, pursuant to 42 U.S.C. § 1983, that the District's actions "are arbitrary, capricious and irrational, undertaken with bad faith pre-

textual motives, and are intentionally and deliberately done for the purpose of denying [Plaintiff] its constitutionally protected rights to due process and equal protection of the laws."  (Compl. ¶¶ 72-75.)  Plaintiff further argues that the District acted with reckless disregard and deliberate indifference and in a manner to shock the conscience.  (Compl. ¶¶ 76-77.)  Plaintiff thus requests equitable relief.  (Compl. ¶ 78.)

Plaintiff's Sixth, Seventh, Eighth, and Ninth Claims for Relief are asserted against the DCC Defendants.  Plaintiff alleges that the DCC is a committee (Compl. ¶ 3) and that "[t]he claims against the DCC Members arise from actions that these members have taken in their official capacity on the DCC."  (Compl. ¶ 4.)  Plaintiff's Sixth Claim for Relief is for a "judgment declaring that no valid grounds exist for the DCC Defendants to withhold approval of [Plaintiff's] plans pursuant to the Protective Covenants."  (Compl. ¶ 96.)  The Seventh and Eighth Claims both allege, "The DCC Defendants breached the Protective Covenants by refusing to allow [Plaintiff's] plans to be considered for final review and approval, and for taking action to prohibit County building permits from issuing."  (Compl. ¶¶ 100, 105.)  In the Seventh Claim, Plaintiff seeks specific performance compelling the DCC Defendants to approve its plans (Compl. ¶ 101), and in the Eighth Claim it seeks damages.  (Compl. ¶ 107.)  In its Ninth Claim alleging civil conspiracy, Plaintiff alleges in part that the DCC Defendants were aware of the District's ultimatum for Plaintiff to execute the proposed easement or else face the District's opposition to Plaintiff's building applications.  (Compl. ¶ 113.)  Plaintiff thus alleges that the DCC Defendants conspired with the District to wrongfully withhold approval of Plaintiff's until it executed the proposed easement.  (Compl. ¶ 114.)

**B. The District's Motion**

In its Motion, the District argues that Plaintiff's Fourth Claim for Relief should be dismissed because it is not ripe for review. "The issue [of] whether a claim is ripe for review bears on the court's subject matter jurisdiction under Article III of the Constitution." *Bateman v. City of West Bountiful*, 89 F.3d 704, 706 (10th Cir. 1996). "Accordingly, a ripeness challenge, like most other challenges to a court's subject matter jurisdiction, is treated as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1)." *Id.* "The plaintiff has the burden of producing evidence to establish that the issues are ripe . . . ." *Signature Props. Int'l P'ship v. City of Edmond*, 310 F.3d 1258, 1265 (10th Cir. 2002).

"A section 1983 inverse condemnation claim under the Fifth and Fourteenth Amendments for a regulatory taking is not ripe 'until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue.'" *Landmark Land Co. v. Buchanan*, 874 F.2d 717, 720 (10th Cir. 1989) (quoting *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 186 (1985)), *abrogated on other grounds by Fed. Lands Legal Consortium v. United States*, 195 F.3d 1190 (10th Cir. 1999). "A 'final decision' requires not only an initial rejection of a particular development proposal, but a definitive action by local authorities indicating with some specificity what level of development will be permitted on the property in question." *Landmark*, 874 F.2d at 720. In *Landmark*, the Tenth Circuit held that the *Williamson* ripeness test applies with equal force to substantive due process claims and equal protection claims. *Id.* at 722. In *Bateman*,

the Tenth Circuit noted that the test had also been applied to procedural due process cases. 89 F.3d at 709 ("The Tenth Circuit repeatedly has held that the ripeness requirement of *Williamson* applies to due process and equal protection claims that rest upon the same facts as a concomitant takings claim." (citing cases)). Because no final decision has been issued in the present case, I will dismiss Plaintiff's Fourth Claim for Relief without prejudice for lack of ripeness.

The facts involved in Plaintiff's Fourth Claim are similar to those in *Edmond*, in which the parties were engaged in negotiations with respect to increasing the sewer capacity of the plaintiff's residential development. 310 F.3d at 1263. The events in *Edmond* relevant to the present case are as follows:

> In January 1999, after a considerable delay, Edmond extended plaintiff's planned unit development for another five years. Shortly thereafter, though, Edmond decided that only 21 additional building permits would be approved, instead of the 100 that had previously been decided upon. And Edmond continued to press Signature to undertake the improvement and expansion of the original sewer system, threatening to impose a building moratorium if Signature refused.

*Id.* After the plaintiff Signature filed a lawsuit, the defendant City of Edmond imposed a moratorium on the building permits. *Id.* The plaintiff brought only a substantive due process action in district court, admitting that a takings claim would have been premature. *Id.* at 1263-64. In arguing that its due process claim was ripe, the plaintiff identified three of the defendant's decisions that it had challenged, all of which "were part of an overall plan to coerce plaintiff into replacing or removing the sewer system . . . ." *Id.* at 1267 n.6. Nonetheless, the Tenth Circuit relied upon its prior holding in

*Landmark* in dismissing Plaintiff's takings and substantive due process claims for failure to meet the finality requirement.  *Id.* at 1267.

Similarly, Plaintiff's Fourth Claim involves the District's alleged refusal, without a final decision, to allow approval of Plaintiff's plans in order to coerce Plaintiff to accept the District's proposal.  In fact, it appears as though Plaintiff admits that its Fourth Claim is not ripe, as Plaintiff alleges in its complaint that "the DCC Defendants have refused to consider [Plaintiff's] plans as complete and ripe for final review and approval."  (Compl. ¶¶ 46-47.)  Furthermore, Plaintiff's failure to avail itself of Colorado's inverse condemnation procedures suffices on its own to render its Fourth Claim unripe.  *See Bateman*, 89 F.3d at 708 (even accepting that final decision had been rendered, takings claim would still not be ripe because plaintiff had not sought compensation pursuant to state inverse condemnation law); *First Bet Joint Venture v. City of Central City*, 818 F. Supp. 1409, 1413 (D. Colo. 1993).  "Plaintiff does not dispute that Colorado has a procedure for bringing an inverse condemnation action."  (Resp. to District's Mot. to Dismiss 8.)

Plaintiff's primary defense against dismissal for lack of ripeness is that it has not brought a takings claim, so the ripeness analysis from *Williamson* should not apply. *See Bateman*, 89 F.3d at 709 ("The Tenth Circuit repeatedly has held that the ripeness requirement of *Williamson* applies to due process and equal protection claims *that rest upon the same facts as a concomitant takings claim*.") (emphasis added).  However, as suggested in *Bateman*, allowing Plaintiff's Fourteenth Amendment claim to proceed just because it has not pled a takings claim "would render the Supreme Court's decision in

*Williamson* nugatory, as it would enable a resourceful litigant to circumvent the ripeness requirements simply by alleging a more generalized due process or equal protection violation." *Id.* at 709. Moreover, in *Edmond*, the plaintiff had brought only a substantive due process action in district court. 310 F.3d at 1263-64. As noted above, the facts involved in Plaintiff's Fourth Claim for Relief are similar to those in *Edmond*, so I reject Plaintiff's argument that "[t]his case does not fall 'squarely' within a takings claim." (Resp. to District's Mot. to Dismiss 8.) In light of the foregoing analysis, I will grant the District's Motion pursuant to Rule 12(b)(1) and dismiss Plaintiff's Fourth Claim for Relief without prejudice.

**C. The DCC Defendants' Motion**

    **1. Standard**

In their Motion, the DCC Defendants request dismissal of Plaintiff's Sixth, Seventh, Eighth, and Ninth Claims for Relief pursuant to Federal Rule of Civil Procedure 12(b)(6), which provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ____, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)).  "A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).  "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  *Id.* at 1950.

### 2. Breach of the Protective Covenants

The DCC Defendants argue that Plaintiff's Sixth, Seventh, and Eighth Claims for Relief should be dismissed because the complaint fails to allege a violation of the Protective Covenants.  Section 3.14 of the Protective Covenants provides, "The DCC shall have the right, but not the obligation, to withhold its approval of plans for any Improvement or Property Use . . . if the Improvement [or] Property Use in any way would violate or would be inconsistent with . . . quasi-governmental regulations or authority . . . ."  (DCC Defs.' Mot. to Dismiss at Ex. A § 3.14.)  As alleged in the complaint, on June 29, 2008, counsel for the DCC Defendants alluded to this provision in notifying Plaintiff that the District's advisement that its requirements had not been met with respect to Plaintiff's property was the basis for the withholding of approval.

The DCC Defendants' argument boils down to whether the DCC Defendants properly found Plaintiff to be not in compliance with "quasi-governmental regulations or authority" based solely upon the District's advisement that its requirements had not been met with respect to Plaintiff's property.  Plaintiff notes that in its Third Claim for Relief, which is not a subject of any motion to dismiss, it requests a declaration "that the

[ ] District has no rights under the Protective Covenants to advise the DCC Defendants that the [ ] District's requirements have not been met with respect to [Plaintiff's] Property." (Compl. ¶ 67.) The DCC Defendants respond that it is not their role, but rather the role of the Court, to decide whether the District's requirements have been met.

I disagree. The DCC Defendants have cited no authority requiring them to follow the advisement of the District blindly. Plaintiff has alleged that they were aware of the circumstances underlying this advisement, so I find that they could have arrived at an independent conclusion that Plaintiff was in fact in compliance with quasi-governmental authority. In any regard, I am unwilling to dismiss the claims at issue at this time while the Third Claim for Relief remains pending. The DCC Defendants also contend that the June 18, 2009 notice to Plaintiff enumerated other requirements that had not been met, but the factual allegations of the complaint, which are entitled to the assumption of truth, provide that the DCC Defendants' counsel notified Plaintiff on June 29, 2008 that the District's advisement was the basis for the withholding of approval.

The DCC Defendants' two other arguments for dismissal of the Eighth and Ninth Claims for Relief are reliant on a finding that they did not breach the Protective Covenants. With respect to the Eighth Claim, DCC Defendants note that under the terms of the covenant, they are only liable for damages for their willful misconduct or bad faith, and they proceed to state in a conclusory manner, "Plaintiff does not allege that the DCC Defendants have acted willfully or in bad faith." (DCC Defs.' Mot. to Dismiss 9.) Then in replying to Plaintiff's arguments in support of a finding of willful

misconduct and bad faith, the DCC Defendants argue, "As discussed, Plaintiff has failed to allege the DCC acted outside of the Covenants." (Reply in Support of DCC Defs.' Mot. to Dismiss 6.) With respect to Plaintiff's Ninth Claim, the DCC Defendants note that one of the elements of civil conspiracy is one or more overt unlawful acts. They proceed to argue both in their Motion and in their Reply that Plaintiff has not alleged any unlawful act because the DCC Defendants were acting in accordance with the Protective Covenants in withholding approval of the plans. Having found that the complaint's allegations support a finding that the DCC Defendants breached the Protective Covenants, I will not dismiss the Eighth Claim due to any failure to plead bad faith or willful misconduct, or the Ninth Claim due to any failure to allege an unlawful act. Accordingly, I will not dismiss the Sixth, Seventh, Eighth, or Ninth Claims for Relief.

### 3. Dismissal of the Individual DCC Members

The DCC Defendants' remaining argument is that the DCC Members should be dismissed, because they were not parties to the Protective Covenant and because they are being sued in their official capacities. Plaintiff responds by noting that the following provision from the Protective Covenants contemplates that individual DCC Members can be sued:

> Neither the DCC [or] any member thereof . . . shall be liable to any Owner
> or to any other person for any loss, damage, or injury, or claim thereof,
> arising out of or in any way connected with the performance of the DCC's
> or the Appointing Authority's duties under this Declaration unless due to
> the willful misconduct or bad faith of the DCC [or] its members . . . .

(DCC Defs.' Mot. to Dismiss at Ex. A § 3.13.) The DCC Defendants argue that this provision does not create liability for the DCC Members but rather "simply requires that

if a tort claim is asserted against an individual member, agent, employee, or other identified person, that individual cannot be liable for damages unless the damage is due to the willful misconduct or bad faith of the individual." (Reply in Support of DCC Defs.' Mot. to Dismiss 6.)  I reject this argument for two reasons.  First, there is no language in this provision limiting claims to tort claims.  Second, I have already found that Plaintiff has not failed to allege willful misconduct or bad faith.  I note that the language in which Plaintiff has identified its allegations of willful misconduct and bad faith mentions the DCC Defendants collectively, thus including the DCC Members.  Accordingly, I agree with Plaintiff that the complaint contains sufficient allegations to support the DCC Members' liability under this provision in the Protective Covenants.

The DCC Defendants' argument that the DCC Members cannot be sued in their official capacities where the entity is also being sued also fails for two reasons.  First, the DCC Defendants have not cited any authority applying the limitation on suing individuals in their official capacities to a non-governmental entity.  Second, the DCC Defendants' reliance, in their Reply, on the Colorado Uniform Unincorporated Association Act, Colo. Rev. Stat. § 7-30-101 et seq., is unavailing.  Even assuming that the DCC Defendants do fall within the ambit of the Act, the Act provides, "A person is not liable for a breach of a nonprofit association's contract merely because the person is a member of the nonprofit association, is authorized to participate in the management of the affairs of the nonprofit association, or is a person considered to be a member by the nonprofit association."  Colo. Rev. Stat. § 7-30-106(2).  This language does not prohibit the DCC Members' liability in the present case, as such liability would be premised on

willful misconduct or bad faith, not mere membership or participation in management of the DCC's affairs. Accordingly, I will not dismiss the DCC Members from the present case.

### D. Conclusion

Based upon the foregoing, it is hereby

ORDERED that Defendant Meridian Metropolitan District's Motion to Dismiss [doc. #11], filed January 26, 2009, is **GRANTED** pursuant to Federal Rule of Civil Procedure 12(b)(1). Plaintiff's Fourth Claim for relief is **DISMISSED WITHOUT PREJUDICE**. It is

FURTHER ORDERED that the "DCC Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)" [doc. #16], filed February 9, 2009, is **DENIED**.

Dated: September 28, 2009

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge