IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 09-cv-00014

LEONARD H. CHANDA & ASSOCIATES, L.P.

    Plaintiff

v.

DESIGN CONTROL COMMITTEE OF MERIDIAN INTERNATIONAL BUSINESS CENTER, et al.,

    Defendants.

---

**ORDER**

---

I.     <u>INTRODUCTION</u>

THIS MATTER comes before me on Defendants' Motion for Summary Judgment [ECF No. 52]. Defendants move for summary judgment on Plaintiff's Sixth, Seventh, Eighth, and Ninth claims for breach of contract and civil conspiracy pursuant to Fed. R. Civ. P. 56. I have also considered Plaintiff's response [ECF No. 58] and Defendants' reply [ECf No. 59]. For the reasons stated below, I grant in part and deny in part Defendants' Motion for Summary Judgment.

II.     <u>FACTUAL BACKGROUND</u>

This case arises from Defendant, Design Control Committee of Meridian International Business Center ("DCC"), conditioning approval of Plaintiff's, Leonard H. Chanda & Associates, design development plans upon executing an easement with the Meridian Metropolitan District (the "District"). I have reviewed the relevant facts and, taken

in the light most favorable to the Plaintiff, they are as follows.

Plaintiff owns a parcel of unimproved real property in Meridian International Business Center. (Defs.' Mot. Summ. J. ¶ 1.) Plaintiff seeks to construct an office building on the real property. (Pl.'s Resp. Summ. J. at 5.) The real property is subject to the Declaration of Protective Covenants of Meridian International Business Center. (*Id.*) The Protective Covenants establish an unincorporated association, called the DCC, that is charged with promulgating rules and standards. (Defs.' Mot. Summ. J. ¶¶ 2-5, 8.) The purpose of the Protective Covenants is

> "to ensure the proper use and appropriate development and improvement of all real property that constitutes Meridian so as to provide harmonious development that will promote the general welfare of the Owners and Tenants thereof and will protect and enhance the present and future value of the such real property."

(Defs.' Mot. Summ. J. ¶ 7; Pl.'s Resp. Mot. Summ. J. at 5.) The Protective Covenants also provide in relevant part that "the DCC has the right, but not the obligation, to withhold its approval of plans for any improvement." (*Id.*)

Defendant DCC is comprised of six regular members and one associate member. (Defs.' Mot. Summ. J. ¶ 5.) Defendant Raymond Bullock is the Chairman of Defendant DCC. (Pl.'s Resp. Mot. Summ. J. at 9.) Defendant Douglas Scott is a nonvoting advisory member of Defendant DCC, who ensures that the District's interests are not neglected by the DCC. (*Id.*)

The District is a Colorado quasi-municipal corporation that provides utility services and features a conduit system for developments and improvements in Meridian. (Defs.' Mot. Summ. J. ¶¶ 9-10; Pl.'s Resp. Mot. Summ. J. at 8.) The Protective Covenants govern the District's utility improvements. (Defs.' Reply Mot. Summ. J. ¶ 1.) A customer seeking

service from the District must submit a written application and pay the prescribed fees before the District can furnish service. (Defs.' Mot. Summ. J. ¶¶ 12-13.) The District's governing body is the Board of Directors. (Defs.' Mot. Summ. J. ¶ 11.) Defendant Bullock is the President and Chairman of the Board of Directors for the District. (*Id.*) Defendant Scott is the Manager of the District. (Defs.' Reply Mot. Summ. J. ¶ 8.) Thus, Defendant Bullock and Defendant Scott hold dual leadership capacities with Defendant DCC and the District.

In 2008, a dispute arose between Plaintiff and the District regarding the District's easement on Plaintiff's property. (Defs.' Mot. Summ. J. ¶ 16). The District reserved a 15-foot utility easement, and a 12-foot irrigation easement on Plaintiff's property. (Pl.'s Resp. Mot. Summ. J. at 9.) However, the District placed a telecommunication conduit in portions of the irrigation easement and certain facilities were located outside the reserved easement area, which encroached onto Plaintiff's property. (*Id.*) As a result, Plaintiff initiated discussions with Defendant Scott regarding possible amendments to the existing easement and alternatively relocation of these encroachments at the expense of the District.

On April 7, 2008, Defendant Bullock, as President of the District's Board, drafted a memorandum regarding the easement issues with Plaintiff, which he sent to Defendant DCC. The memorandum was actually finalized at the request of Defendant DCC's Manager of Design Review and Covenant Administration. (Pl.'s Resp. Mot. Summ. J. at 11 Ex. 5.) On April 16, 2008, Plaintiff presented plans to the DCC for Design Approval. (Defs.' Mot. Summ. J. ¶ 32.) Defendant Bullock and Scott used the memorandum at the April meeting and Defendant DCC subsequently conditioned approval on Plaintiff executing a new easement with the District. (Defs.' Mot. Summ. J. ¶ 32.) Two days later Plaintiff's

representative met with Defendant Bullock to discuss the easement issue. (Pl.'s Resp. Mot. Summ. J. at 13.) There is a dispute between the parties about what happened at this meeting. Plaintiff's representative states that Defendant Bullock made threats that the Plaintiff's building would never be built, and that the District could take Plaintiff's property. (*Id.*) Defendant DCC denies that Defendant Bullock said anything to that effect. (Defs.' Reply Mot. Summ. J. ¶ 16.)

On June 6, 2008, the District drafted another memorandum that included a new *proposed* easement (the "June Easement"). (Defs.' Mot. Summ. J. ¶ 20.) Defendant Scott presented the June Easement to Plaintiff at Defendant DCC's June 11, 2008 meeting. (Pl.'s Resp. Mot. Summ. J. at 15.) The June Easement was exclusive to the District, and sought to cover a blanket area of 40-feet, which encompassed an area larger than previously contracted and more expansive than the encroachments. (Pl.'s Resp. Mot. Summ. J. at 14.) Plaintiff refused to execute the new easement at the meeting without reviewing the terms, and Defendant DCC proceeded to condition approval on execution of the June Easement. (Pl.'s Resp. Mot. Summ. J. at 15 Ex. 12.)

A conditional approval means that the applicant may move forward to the next stage of Defendant DCC's approval process, but the applicant must address those conditions prior to obtaining a final approval from the DCC. (Defs.' Mot. Summ. J. ¶ 30.) The conditions for Plaintiff included (1) June Easement to be executed and provided to the District, (2) Meridian Golf Course review and comment on site drainage report/plan, (3) Construction Logistics Plan and Performance Surety be provided and accepted by DCC, and (4) Site utility service plans be submitted and accepted by the District. (Defs.' Mot. Summ. J. ¶ 44.) Defendant DCC's counsel drafted a letter that stated the Plaintiff failed to

meet the District's requirements, "and that is *the basis* for withholding approval." (Pl.'s Resp. Mot. Summ. J. at 17; Ex. 14.)

Plaintiff initiated these proceeding because he was unable to negotiate a new easement with the District, and Defendant DCC would not grant further approval without execution of the June Easement. (Pl.'s Resp. Mot. Summ. J. at 17.) The District filed a Resolution of Necessity to acquire, by condemnation, an easement on Plaintiff's property. (Defs.' Mot. Summ. J. ¶ 24.) On May 7, 2009, the District and Plaintiff entered into an easement and the condemnation action was dismissed by stipulation of the parties. (Defs.' Mot. Summ. J. ¶ 26.)

III. ANALYSIS

A. Standard of Review

Summary judgment may be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The initial burden of showing that no genuine issue of material fact exists is borne by the moving party. *E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000).

Once the moving party meets this burden, the burden shifts to the nonmoving party to "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which it carries the burden of proof." *Jenkins v. Woods*, 81 F.3d 988, 990 (10th Cir. 1996); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead bring forward "specific facts showing that there is a genuine issue for trial."

*Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A genuine issue arises when "a reasonable jury could find in favor of the nonmovant." *Lawmaster v. Ward*, 125 F.3d 1341, 1347 (10th Cir. 1997).

In reviewing a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 590 (10th Cir. 1999). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Sw. Bell. Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

B. <u>Breach of Protective Covenants</u>

Defendants seek summary judgment on Plaintiff's claims for relief for breach of the Protective Covenants. I will first address the Sixth and Seventh Claims for Relief, which seek specific performance and a declaratory judgment. Plaintiff seeks an Order from this Court granting a declaratory judgment or specific performance requiring Defendant DCC to grant final approval to Plaintiff. The purpose of declaratory relief is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." *Lakewood Fire Prot. Dist. v. City of Lakewood*, 710 P.2d 1124, 1126 (Colo. App. 1985). Declaratory relief is a remedial rule that is to be liberally constructed and administered. *Id.* There are situations where courts refuse to impose declaratory relief, such as if the relief, "would not terminate the uncertainty or conflict giving rise to the proceedings." *Id.*; *Prod. Eng'g & Mfg., Inc. v. Barnes*, 424 F.2d 42 (10th Cir. 1970). Further, in order for a court to decree specific performance, "the terms of the contract must be clear, definite, certain and *complete*." *Schreck v. T & C Sanderson Farms, Inc.*, 37 P.3d 510, 514 (Colo. App. 2001) (emphasis added).

I find there is no genuine issue of material fact as to whether Plaintiff has satisfied the criteria for Defendant DCC's final approval. Plaintiff simply states that it was not going to pay fees, if approval is still pending with the DCC. (Pl.'s Resp. Mot. Summ. J. at 26.) Unfortunately, Plaintiff has not provided any evidence that it has completed the outstanding issues outlined by Defendant DCC, which includes (1) a Construction Logistics Plan and Performance Surety provided and accepted by DCC, and (2) payment of the Site Connection Fee to the District. (Def.'s Mot. Summ. J. at 20; Ex. A-8.). Plaintiff simply asks this Court not to grant summary judgment at the risk that Defendant DCC *might* improperly withhold approval. This is not a basis for denying summary judgment. I have not found that Plaintiff presented sufficient evidence to show a genuine issue of material fact. Therefore, I grant Defendants' Motion for Summary Judgment as to Plaintiff's Sixth and Seventh Claims for Relief.

With respect to Plaintiff's Eighth Claim for relief, DCC Defendants first argue that summary judgment is appropriate because they acted within the scope of the Protective Covenants as a matter of law. Defendant DCC contends that conditioning approval of Plaintiff's design development plans on Plaintiff executing the June Easement with the District was expressly permitted by the Protective Covenants. Plaintiff argues that Defendant DCC did not properly enforce nor adhere to the Protective Covenants. The "construction of a covenant is a question of law." *Buick v. Highland Meadow Estates at Castle Peak Ranch, Inc.*, 21 P.3d 860, 862 (Colo. 2001). This Court is required to "follow the dictates of plain English," and "construe the covenants as a whole, keeping in mind their underlying purpose." *Id.*

The express language of the Protective Covenants provides that "the DCC shall

have a right, but not the obligation, to withhold its approval of plans ... for non-compliance with the Protective Covenants." (Defs.' Mot. Summ. J. Ex. A-1 § 3.14.) Furthermore, the purpose of the Protective Covenants is to "ensure the proper use and appropriate development and improvement of all real property . . . that will promote the general welfare of the Owners and Tenants thereof." With this purpose in mind, I address the scope of the Protective Covenants. I agree with Defendant DCC that the express language of the Protective Covenants give them the right to condition approval of plans. However, I also find that Defendant DCC is not *obligated* to condition approval on the District's advisement. In fact, such an obligation would contradict the purpose of the Protective Covenants, which is to promote the general welfare of Owners and Tenants, not the general welfare of the District.

The parties do not dispute that the Protective Covenants apply to the District and the utility improvements it installs on property in Meridian. (Defs.' Reply Mot. Summ. J. at 4, ¶ 1.) Additionally, the parties do not dispute that Plaintiff is an Owner within the meaning of the Protective Covenants. Plaintiff's evidence points to the lack of any independent decisions made by Defendant DCC regarding the District's advisement. Plaintiff highlights the email from Defendant DCC's Covenant Manager to Defendant Scott facilitating the formal completion of the advisement from the District. (Pl.'s Resp. Mot. Summ. J. Ex. 5.) More specifically, DCC's Covenant Manager asked, "can you maybe print [the advisement] on [District] letter head and then we will get [Defendant Scott] to sign it." *Id.* Not to mention, the lack of discussion during any of Defendant DCC's meetings regarding the advisement, "no committee member [other than Defendant Bullock] commented in any respect with regard to [the District's] requirements." (Pl.'s Resp. Mot. Summ. J. Ex. 1.) I

8

find that Plaintiff has established a disputed issue of fact whether Defendant DCC acted within the scope of the Protective Covenants. A reasonable juror could infer that Defendant DCC did not act pursuant to a right under the Protective Covenant when it conditioned Plaintiff's plans on the June Easement without any independent decision-making.[1]

The Protective Covenants also provide that "the Applicant is responsible for compliance with the rules and regulations of [the District] and must receive authorization from [the District]." (Defs.' Mot. Summ. J. Ex. A-5 § 1.0(B).) I find there is a genuine dispute of material fact as to whether Plaintiff's refusal to execute the June Easement equates to noncompliance with the District's rules, regulations, and valid requirements. Nor is it clear that Plaintiff's refusal justified Defendant DCC's conditional approval. Although Defendant DCC points to the District's letter as grounds for noncompliance, it is not entirely clear. (Defs.' Reply Mot. Summ. J. at Ex. A-16.) The letter suggests that the utility construction plans were acceptable, but certain conditions had to be met for final release, nothing in the letter suggests that utilities were unauthorized or that Plaintiff was not in compliance. (*See Id.*) Defendant Scott seems to contend that utilities could not be provided without resolution of the easement, while Defendant Bullock suggests that there was no denial of utilities to Plaintiff's property. (Pl.'s Resp. Mot. Summ. J. Ex. 2 24:3-6; Ex.

---

[1] Defendant DCC contends that Plaintiff may not raise, at the summary judgment phase, arguments that Defendant DCC did not hold the District accountable under the Protective Covenants. (Defs.' Reply. Mot. Summ. J. at 11.) Defendant DCC is right that the complaint must give Defendant DCC "fair notice of what [Plaintiff's] claim is and the grounds upon which it rests." *Green Country Food Mkt., Inc. v. Bottling Grp., LLC*, 371 F.3d 1275, 1279 (10th Cir. 2004). However, a "plaintiff should not be prevented from pursing a claim simply because of a failure to set forth in the complaint . . . provided [it] will not prejudice the other party." *Id.* Defendant DCC has not demonstrated how Plaintiff's argument has prejudiced its case or defenses, or that it necessitates any further discovery that might waste Defendant DCC's resources. *See Id.* In fact, Defendant DCC does not dispute that the District's utility improvements are governed by the Protective Covenants. (Defs.' Reply Mot. Summ. J. ¶ 1.) Therefore, Plaintiff's argument is properly before the Court. I find that reasonable juror could infer that Defendant DCC exceeded the scope of the Protective Covenants with biased enforcement of those Covenants against Plaintiff.

1 37:25 - 38:3.) This dispute is best decided by the trier of fact evaluating the testimony and evidence presented in court.

Based on the foregoing, I find that there is a genuine dispute as to whether Defendant DCC acted within the scope of the Protective Covenants when it conditioned Plaintiff's design development approval on the District's advisement. Defendants' Motion for Summary Judgment is thus denied as to the breach of contract based on the scope of the Protective Covenants.

Defendants also argue that summary judgment is appropriate because there is no evidence that Defendant DCC acted unreasonably by conditioning approval of the Plaintiff's design development plans on executing the June Easement with the District. A committee is required to use its authority in enforcing protective covenants in good faith and in a reasonable manner. *Woodward v. Bd. of Dirs. of Tamarron Ass'n. of Condo. Owners*, 155 P.3d 621, 624 (Colo. App. 2007). More specifically, when "approving or disapproving plans [the committee's decision] must be reasonable, made in good faith, and must not be arbitrary or capricious. *Id.* (internal quotations omitted). A determination of reasonable or arbitrary is a question of fact and such issues are "particularly unsuitable for summary judgment." *Id.* at 625. Reasonableness considers whether the approval or disapproval was "in harmony with the purposes declared in the covenants." *See Rhue c. Cheyenne Homes, Inc.*, 168 Colo. 6, 10 (Colo. 1969).

I find there is a genuine dispute of material fact as to whether Defendant DCC acted unreasonably. The June Committee Action Notice sent to Plaintiff specifically required Plaintiff to execute the June Easement, which was the overreaching and exclusive easement created by the District. (Pl.'s Resp. Mot. Summ. J. Ex. 12.) Further, Plaintiff's

representative asserts that Defendant Bullock threatened that "if [Plaintiff] [didn't] go along with the District [Plaintiff] [will] never see [its] building built. (Pl.'s Resp. Mot. Summ. J. at 13.) In fact, only after initiating litigation was the easement issue resolved with the District, which included terms more favorable for Plaintiff. (Pl.'s Resp. Mot. Summ. J. Ex. 16; Ex. 8.) I find that a reasonable juror could conclude that Defendant DCC and Defendant Bullock's actions empowered the District not to negotiate the terms of the June Easement. Plaintiff presents sufficient facts that could support Defendant DCC's conditional approval as pretext for furthering the District's agenda, which would be against notions of good faith.

I also find that there is a genuine dispute of material fact as to whether Defendant DCC's conditional approval was "in harmony" with the purpose of the Protective Covenants. Defendant DCC's evidence provides that Plaintiff would not have had access to necessary utilities without resolving the easement dispute with the District. (Defs.' Mot. Summ. J. at 18.) In addition, without utilities there is no way the Plaintiff could have appropriately and harmoniously developed its property thereby conflicting with the purpose of the Protective Covenants. (*Id.*) Plaintiff's evidence asserts that Defendant DCC acted arbitrarily and capriciously, which is not in harmony with the Protective Covenants. Plaintiff points to the one-sided enforcement of the Protective Covenants against Plaintiff. *Supra* page 8. Further, Plaintiff presents evidence that the June Easement had nothing to do with its design development plans. (Pl.'s Resp. Mot. Summ. J. at 23; Ex. 12.) Finally, Plaintiff points to Defendant Bullock's statement that the District never refused utilities on Plaintiff's application. (Pl.'s Resp. Mot. Summ. J. at Ex. 1 37:25 - 38:3.)

I find there is a genuine issue of material fact surrounding the reasonableness of Defendant DCC's decision based on the District's advisement. Defendants' Motion for

Summary Judgment is thus denied on this issue.

Defendant DCC also seeks summary judgment on the Eighth Claim because Plaintiff has allegedly not suffered any harm. In order for a plaintiff to recover damages, the plaintiff must have suffered a "legally cognizable injury or harm." *Technics, LLC v. Acoustic Mktg. Research Inc.*, 179 P.3d 123, 126 (Colo. App. 2007). Defendant DCC asserts that the conditional approval allowed Plaintiff to move forward with its project, and Plaintiff ultimately decided to suspended work. (Defs.' Mot. Summ. J. ¶ 45.) Plaintiff's evidence points to the letter received from Defendant DCC's counsel regarding the conditional approval. In particular, the letter stated that the reason for withholding approval was the advisement from the District that its "requirements [had] not been met . . . and that is the basis for withholding its approval on [Plaintiff's] plans." (Pl.'s Resp. Mot. Summ. J. Ex. 14.). Plaintiff also presents evidence that its project suffered delays, restart costs, and litigation costs as a result of Defendant DCC's breach and conditional approval. (Pl.'s Resp. Mot. Summ. J. at 25-26.). A reasonable juror could infer that the conditional approval of Defendant DCC and the non-negotiable June Easement effectively stopped Plaintiff's project, thus resulting in harm to Plaintiff. I find a question of material fact exists and a jury must determine whether Plaintiff suffered any harm by Defendant DCC's conditional approval of Plaintiff's design development plans. Defendants' Motion for Summary Judgment is thus denied on this issue.

In the Eighth Claim for Relief, Plaintiff seeks monetary damages for DCC Defendants breach of the Protective Covenants. The Protective Covenants themselves provide that "neither the DCC nor any member thereof . . . shall be liable to any Owner . . . unless due to the willful misconduct or bad faith of the DCC or its members." (Defs.' Mot.

Summ. J. Ex. A-1 § 3.13.) The Court is required to construe the covenants following "the dictates of plain English." *Buick v. Highland Meadow Estates at Castle Peak Ranch, Inc.*, 21 P.3d 860, 862 (Colo. 2001). A good starting point is to define bad faith, which is "dishonesty of belief or purpose." *Black's Law Dictionary* (8th ed. 2004). Additionally, willful misconduct is "misconduct committed voluntarily and intentionally" and involves something "more than negligence." *Id.*

Defendant DCC argues that there is no evidence that it acted with willful misconduct or bad faith by delaying final approval of Plaintiff's design plans. (Defs.' Mot. Summ. J. at 21.) Plaintiff submits evidence that the Defendant DCC did act with willful misconduct and bad faith. Plaintiff's evidence again highlights the one-sided enforcement of the Protective Covenants against Plaintiff and not the District. (Pl.'s Resp. Mot. Summ. J. at 28.) Plaintiff's project halted when Defendant DCC conditioned approval on the June Easement with the District, and the District in turn refused to negotiate the terms of the June Easement. (*Id.*) There is also testimony that Plaintiff did suffer actual damages, such as "project delay and restart costs." (Pl.'s Resp. Mot. Summ. J. at Ex. A-9, 228:2-25.) Finally, Plaintiff points to Defendant Bullock's threats again, which were carried out by Defendant DCC when it conditioned approval on the June Easement. (Pl.'s Resp. Mot. Summ. J. at 28.) Plaintiff's evidence can infer a neglect and refusal by Defendant DCC to perform its duties required by the Protective Covenants. This neglect can support the contention that Defendant DCC acted without regard for consequences or the rights of Plaintiff, as an Owner under the Protective Covenants.

I conclude that there is a genuine issue of material fact about the willful misconduct or bad faith of Defendant DCC. As such, I cannot grant Defendants' Motion for Summary

Judgment on the monetary damages claim.

### C. Defendant Bullock and Defendant Scott

I must consider whether Defendants Bullock and Scott are entitled to summary judgment on all claims against them in their official capacity. The parties do not dispute that Defendant Bullock and Defendant Scott are only being sued in their official capacity as members of the DCC. The U.S. Supreme Court distinguishes between personal capacity and official capacity suits. More specifically, "personal capacity suits seek to impose personal liability upon a government official for actions taken under color of state law, [while] official capacity suits are only another way of pleading an action against the entity." *Johnson v. Bd. Of County Comm'rs.*, 85 F.3d 489, 493 (10th Cir. 1996) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)). Courts have found official capacity suits against members of private entities puzzling. *See New York v. N. Storonske Cooperage Co., Inc.*, 144 F.R.D. 179, 183 (N.D.N.Y. 1992); *Archuleta v. Corr. Healthcare Mgmt., Inc.*, 2009 WL 1292838 (D.Colo. May 8, 2009). Normally, official capacity suits are used by plaintiffs against government officials as a way of circumventing qualified immunity. It is not entirely clear to me how concerns of qualified immunity would apply in a case involving a private entity.

I agree with Defendant DCC that an official capacity suit against a member of a private entity is really a suit against the entity itself. A person sued in an official capacity does not have a "stake, as an individual, in the outcome of the litigation." *Johnson*, 85 F.3d at 493. Here, I do not find that suing Defendants Bullock or Scott in their official capacity involves any personal or individual stake for Defendants in the outcome of this litigation. Plaintiff does not seek to recover any damages or relief from Defendants Bullock or Scott

personally or individually, nor does Plaintiff allege any additional allegations against the individual Defendants. In fact, I find it draws an unnecessary distinction between Defendant DCC and Defendants Bullock and Scott. *See New York*, 144 F.R.D. at 182. I am not suggesting that Plaintiff cannot use the willful misconduct or bad faith actions of Defendants Bullock and Scott in the breach of contract claim against Defendant DCC. I only find that Plaintiff cannot seek to name Defendants Bullock and Scott in their official capacity in this suit.

I find there is no genuine dispute of material fact that Plaintiff is suing Defendants Bullock and Scott in their official capacities as members of Defendant DCC, and that it is improper. Therefore, I must grant Defendants' Motion for Summary Judgment as to all claims against Defendants Bullock and Scott.

D.     Civil Conspiracy against All Defendants

The final issue before me on Defendants' Motion for Summary Judgment is whether Plaintiff has demonstrated an issue of fact to support the civil conspiracy claim against Defendant DCC. A plaintiff's' prima facie case of civil conspiracy includes proof of (1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the course of action; (4) an unlawful overt act; and (5) damages as a proximate result. *Jet Courier v. Mulei*, 771 P.2d 486, 502 (Colo. 1989); *Hertz v. Luzenac Group*, 576 F.3d 1103, 1116 (10th Cir. 2009).

Defendant DCC challenges the facts set forth by the Plaintiff that establish an unlawful overt act. Plaintiff alleges that it was an unlawful overt act for Defendant DCC to deprive Plaintiff "of the ability to develop its property based upon [a] refusal to sign a sham easement tendered by a known wrongdoer, the District." (Pl.'s Resp. Mot. Summ. J. at 29-

15

30.) I agree with Defendant DCC, that Plaintiff has simply found another way of saying that Defendant DCC breached the Protective Covenants by conditioning approval on Plaintiff's execution of the June Easement with the District. However, Colorado law is clear that a party's breach of its own contract does not support a civil conspiracy claim. *Logixx Automation, Inc. v. Lawrence Michels Family Trust*, 56 P.3d 1224, 1231 (Colo. App. 2002) (holding "that there can be no conspiracy by two or more parties to a contract to breach that contract"). Plaintiff does not cite any additional evidence of any other unlawful acts that might support a civil conspiracy claim. Without any additional evidence, Defendant DCC's act of breaching a contract with Plaintiff may have been improper, unfair, and even wrong, but this breach of contract cannot support a claim for civil conspiracy. Moreover, Plaintiff has not pointed the Court to any controlling authority or case law to the contrary. I am therefore unable to conclude that Plaintiff established a genuine issue of fact that Defendant DCC's actions rise to the level of "unlawful" required to support a claim for civil conspiracy. Defendants' Motion for Summary Judgment is granted as to Plaintiff's Ninth Claim for Relief.

IV. CONCLUSION

Accordingly, it is

ORDERED that Defendants' Motion for Summary Judgment is **GRANTED IN PART and DENIED IN PART.** The motion is **GRANTED** and judgment is entered in favor of all Defendants on Plaintiff's Sixth, Seventh and Ninth Claims for Relief. The motions is also **GRANTED** as to all claims against Defendants Raymond A. Bullock and Douglas C. Scott. Defendants' Motion for Summary Judgment is **DENIED** as to Plaintiff's Eighth Claim for Relief against Defendant DCC. It is

FURTHER ORDERED that the parties shall meet and confer and contact chambers to schedule a trial to the Court on Plaintiff's Eighth Claim for Relief and a final trial preparation conference.

Dated this 30th day of September, 2010.

BY THE COURT:

s/ Wiley Y. Daniel
WILEY Y. DANIEL,
CHIEF UNITED STATES DISTRICT JUDGE